We appreciate your willingness to accept the appointment in this case. Sullivan against the United States is next on for argument. Mr. Gross. Good morning. Your Honor's may please the court. There are two issues presented by this case, both of which ask the same question. Whether this court can say at this stage that Mr. Sullivan's ineffective assistance of counsel claims are merits based upon the current record. The answer to that question is no. Therefore, the district court abuses discretion when it denies his request for an evidentiary hearing. First, I'm Mr. Sullivan's Batson claim. It is 2255 motion. Mr. Sullivan alleges that the that his counsel failed to notice the systematic exclusion of African American and Hispanic jurors. You're you refer to systematic exclusion. But as as I understand it, the contention is that the prosecutor exercise one peremptory challenge against a black member of the denier. How is that systematic exclusion? I think it's important to first note the actual allegation in Mr. Sullivan's motion is that it was systematic exclusion. He pointed the strike of Mr. Salter to highlight that the only evidence that we can tell from the current record. Is there any reason to believe that there was more than one challenge against a black member of the denier? We simply don't know, Your Honor. I think then there's no reason to believe that there have to be allegations on a collateral attack. And the only allegation is that there was a challenge to one. So how is that systematic exclusion? Well, first, Your Honor, the Supreme Court has recognized the Snyder and other cases that even the exclusion of one juror is sufficient to trigger. It can be. It can be. Certainly, Your Honor. But if you're looking for a prima facie case of race discrimination, it's very hard to take seriously the argument that any every peremptory challenge against any black juror. And presumably that means every peremptory challenge against any white juror, any male juror, any female juror, right? That every challenge is itself a prima facie case of race discrimination or sex discrimination. That's not conceivable. I agree. Do we have any other basis here? Here, Your Honor, the basis is, as in this court's decision in McMath, that the strucken juror had characteristics similar to other jurors that were not struck by the government preemptorily. For example, Mr. Salter here, although an attorney, stated during his discussion during the voir dire that he had his experience with the criminal justice system would not impact his ability to be impartial. And everybody has to accept that answer. I'm sorry, Your Honor? And that answer must be accepted? Is that your theory? My only point here, Your Honor, is that other jurors answered similarly, and the government did not strike those jurors. Are there other criminal defense lawyers? There were no other criminal defense attorneys, Your Honor. We can see that point. And I think we acknowledge that the fact that Mr. Salter was a criminal defense attorney is a race-neutral justification. But that still does not defeat Mr. Sullivan's claim, because that is at most sufficient to meet step two of the Batson analysis. As this court has recognized in Stevens and McMath likewise, just because there's a race-neutral justification, there still needs to be a determination by the trial court as to whether or not that was the actual reason for the strike. It very well could have been here, but we don't have that evidence in the record, which is why an evidentiary hearing is necessary. The government also raises this point, again, to proffer the idea that in this court's decision in Mahaffery, the fact that Mr. Salter is a criminal defense attorney is insufficient to establish the first prong of Batson. We know, as this court clarified in Stevens in 2005, Stevens won. Mahaffery, in a footnote, had stated that perhaps if all seven struck African-American jurors were all attorneys, perhaps that would not be sufficient to give rise to the first set of Batson. That wasn't the case in that decision, and moreover, all that does is highlight that you need to look at the totality of the circumstances when determining whether or not the prima facie Batson claim is met. Here, we can't do that because the record is silent as to the race of every juror, except for Mr. Salter. In order to engage in that sort of analysis, there needs to be a remand to the evidentiary hearing to decide, A, whether Mr. Salter, or excuse me, whether Mr. Sullivan's ineffective essential claim is plausible because there is, in fact, a potentially meritorious Batson claim, and two, that his counsel did not have a reasonable strategic reason for not raising that objection. The second issue here, Your Honor, is similar in the sense that Mr. Sullivan raised an allegation that his counsel was ineffective for failing to introduce expert testimony regarding the issue of loss causation. I think the arguments apply the same as with the Batson claim, that at most, we simply do not know whether or not that is a potentially meritorious claim. And when that's the case, when this Court cannot conclusively determine, based upon the record before it, that a claim is meritless, an evidentiary hearing is both warranted and required under Section 2255. Well, it's your burden to establish that the claim would have merit. That's correct, Your Honor. And again, looking at Mr. Sullivan's 2255 motion, construed liberally as a pro se pleading should be. Well, do we have an affidavit from an expert saying, if I had been retained, I could have provided the following estimate and it would have helped Sullivan? We do not have that in this case, Your Honor. I don't understand why one would even be tempted to fault a lawyer for not producing such an expert unless there was good reason to believe that such an expert, if produced, would have helped the defendant. Now, I know that you got into this only in March 2017. You can't be blamed for what happened or didn't happen in the District Court. But we have to take that as it is, and there doesn't seem to be any reason to think that the expert would have helped. Mr. Sullivan's allegation is that if he had expert testimony, he could have established that the loss amount was less than $400,000, which would go to the prejudice element of the Strickland claim because he would receive a lesser sentence. If he asserts that, what is the reason to believe that that is true? If he asserts that water boils at 50 degrees Celsius, we don't believe it's true. You need to provide some support for one's assertions. I respectfully disagree, Your Honor. In this Court's decision in CAFO, the Court emphasized the importance of signing an affidavit once submitting a 2255 motion. And the reason for that is because in that case, the motion does in fact become the evidence. Again, I recognize my client has filed this pro se. It's not the most artfully drafted document that you might expect if he was represented at the time. But the fact that he signed that affidavit, as is required under 2255, turns it into evidence under this Court's decision in CAFO. In addition, to the extent that this Court would like to see additional evidence, the proper remedy here is not to dismiss Mr. Sullivan's case, but as in Bruce or in CAFO, to remand and allow Mr. Sullivan the opportunity to supplement his 2255 motion and to resubmit it to the District Court for its consideration in the first instance. Unless this Court has further questions, I'd like to reserve the rest of my time. Thank you. Thank you, Mr. Gross. Ms. Artem. Good morning, Your Honors. May it please the Court, Tiffany Artem on behalf of the United States. The District Court correctly denied the petitioner's 2255 motion, where the record shows that counsel reasonably refrained from making a Batson objection after a criminal defense attorney was stricken from the jury. And the record additionally had no supporting evidence for petitioner's ineffective assistance of counsel allegation. For the first time on appeal, petitioner points to a stricken juror to attempt to supply a factual basis for his allegations. The record shows that this stricken juror is a criminal defense attorney. A stricken juror sounds like somebody who's just had a heart attack. Can't we find some other word to use? A juror who was struck or the challenged juror. The challenged juror. The record shows that this challenged juror is a criminal defense attorney who has active cases opposing the government in this courthouse. And contrary to defendant's assertion, the salient characteristic of this juror, potential juror, was that he was a criminal defense attorney. It's not that he, as defendant pointed out, has relationships with other attorneys. It's that he is an active criminal defense attorney. So the comparison with McMath, where a defendant pointed to one African-American juror that was stricken, that juror had one salient characteristic, one defining characteristic, and that was that that juror was retired. And there was a retained juror that actually was not stricken by anyone, and that juror was also retired. So the comparison of that salient characteristic provided the inference, a prima facie case, that a preemptory challenge was lodged because of a discriminatory motive. In this case, we don't have that. And as trial counsel, it's not objectively unreasonable to not lodge a Batson objection. And it's not prejudicial to not raise a meritless claim. And we know it's not sufficient to point to a stricken juror's race to even make a prima facie case in the district court. And as the defendant points out in Mahaffey, this court did opine that a district court can consider an apparent characteristic, such as one's attorney status, in determining that there is no prima facie case of discrimination. So construing the defendant's pro se filings liberally, there are absolutely no facts to support his allegation. He does include two affidavits, his own affidavit and his brother's affidavit, but none of those include any facts about which jurors were stricken, why, what race they were, and what in the record made him think that those challenges were because of a discriminatory motive. In fact, the record shows no evidence of any questions or statements by the government that evidence any discriminatory motive. And there is no evidence of any pattern of strikes against a particular group of jurors. This is precisely the reason that the court requires an affidavit in these 2255 petitions, because the affidavit has to be able to provide some evidence beyond conclusory assertions for relief. And I would like to point out for the court that in CAFO, there was an affidavit that the petitioner filed, and that affidavit is very different than all of the information we have in the defendant's pro se filings. In that affidavit, the defendant alleged that he asked his attorney to appeal his case. He included how many times he called that attorney, he included that he wrote his attorney a letter, and he included the fact that he asked his family members to contact that attorney, and he had never received any information back. That is many more facts than we have in this case. And I would also like one last matter on this Batson issue. The fact that the record is silent is not evidence of counsel being ineffective. The court can imagine a scenario where there is no actual discriminatory challenge, and in that record, there would be no reason for race to be in the record. There is a case, Brazil versus the United States, where a petitioner did meet the threshold to get a hearing, even though the record was silent about race. So this court has not looked at a silent record to determine that it's evidence that counsel was inefficient, but it has looked at it to determine that there is no evidence of any discriminatory motive. Now I'd like to take a moment to address the allegation that counsel was ineffective at sentencing. The record shows that counsel pursued a strategy at sentencing, and the record also shows that that strategy was reasonable given the evidence presented at trial. The strategy in this case was to poke holes in the government's proof, and that was a reasonable strategy given that this was a large scheme to defraud many homeowners of the equity in their homes. The defendants involved multiple co-schemers, including the defendant's brother, who was a co-defendant. They had multiple businesses operating on different names. They kept poor records, and they even created fraudulent records in the course of this scheme. They commingled their funds, and because of all that, it was reasonable for counsel to poke holes in the government's loss analysis. The record shows that counsel was in part effective. The government's initial calculation for loss, which was agreed upon by probation, was $1.3 million. And after the trial counsel's objections to the PSR sentencing memorandum, that number was lowered. And after the actual sentencing hearing, where there's a record of counsel advocating for deductions of value and labor, that number was reduced from $1.3 million to $748,601. As this court points out, there is nothing in the defendant's filings where he identifies an expert, he doesn't produce an affidavit, he doesn't state the nature of the expert's testimony, and he does not state what that expert would rely on. So there is no reason that a phantom expert would have changed the calculation for the loss amount from $1.3 million to under $400,000, which is what is required to demonstrate prejudice. If there are no other questions, I would ask this court to affirm the ruling of the district court. Thank you. Thank you, counsel. Anything further, Mr. Gross? Thank you, Your Honor. Two brief points on rebuttal. First, as I understand the government's argument with regard to the strike of Mr. Salter, it would be advocating a bright-line rule that an attorney that is stricken, and I apologize for using that term again, can never give rise to a batson violation. This court has never held that. The only citation the government has held that the government cites to is Mahaffrey. We don't believe that either, so go ahead. The only case that the government cites to is Mahaffrey. That suggestion was raised in a footnote, and this court later clarified in Stevens that footnote simply states that the court must consider the totality of the circumstances. Where the court can't do that, as was the case in Brazil, the appropriate remedy is an evidentiary hearing. Second, there is an insinuation that the record shows some strategy on the part of Mr. Sullivan's counsel to not either introduce an expert or raise a batson violation. The record is actually silent as to whether or not there was any strategic reason here, which is not surprising, as this court has noted on multiple occasions, an ineffective assistance to counsel claims, and as a result, this court should not surmise or draw an inference that a strategic reason was made, but instead ask for that issue to be probed at the evidentiary hearing. Unless there's no further questions, we'll rest on our briefs. Thank you. Thank you very much, Mr. Gross. And we appreciate your willingness and that of your law firm to accept the appointment in this case. Indeed we do. The case is taken under advisement.